IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLYSON B., et al.,<br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MONTGOMERY COUNTY<br>INTERMEDIATE UNIT NO.23,<br>　　　　　　Defendant. | Civ. No. 05-6807 |

OPINION

June 12 , 2008                                                                                               Pollak, J.

Presently before the court is defendant Montgomery County Intermediate Unit Number Twenty-Three's ("MCIU") partial motion to dismiss (Docket No. 10) plaintiff Allyson B.'s complaint.

I.    Background

Allyson B., a minor, brings this action against MCIU for allegedly failing to provide her with a free and appropriate public education in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–82; § 504 of the Rehabilitation Act, 29 U.S.C. § 794; and 42 U.S.C. § 1983.  She requests injunctive relief, private school tuition reimbursement, declaratory relief, compensatory education, money damages, attorneys' fees, and costs.

Allyson suffers from a severe hearing impairment treated with a cochlear implant. According to plaintiff, a cochlear implant processes speech and stimulates the auditory nerve in order to simulate hearing. To use the device effectively, Allyson must be trained to understand the signals the device transmits. In addition, she must be trained to speak. A cochlear implant, plaintiff alleges, is fundamentally different from a hearing aid inasmuch as it simulates sounds, rather than amplifying sounds. Accordingly, plaintiff contends that a person with a cochlear implant needs particularized instruction different in kind and amount from the instruction needed by persons with hearing aids. Plaintiff's contention is that defendant's proposed individualized education plan ("IEP") failed, *inter alia*, to provide the individualized training that she needs. Thus, plaintiff's parents have been paying for her to attend a private school that, she alleges, meets her needs appropriately.

Defendant moves to dismiss four aspects of the complaint: (1) plaintiff's request for money damages under 28 U.S.C. § 1983 for defendant's alleged violation of the IDEA, (2) plaintiff's request for money damages directly under the IDEA, (3) plaintiff's request for compensatory education under the IDEA, and (4) plaintiff's request for money damages under § 504 of the Rehabilitation Act. Plaintiff concedes defendant's second and third objections, so the motion will be granted as to those objections, and the court will not address them further. The other two objections will be addressed in turn.

II.     Legal standard

Defendant moves to dismiss various aspects of the complaint under Federal Rule of Civil Procedure 12(b)(6), which allows for dismissal when the complaint "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.2d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007)).

III.   Discussion

    A.   Whether plaintiff may seek money damages under § 1983

Plaintiff seeks money damages under 42 U.S.C. § 1983 for defendant's alleged violations of the IDEA. Defendant responds that the Third Circuit, sitting en banc, has expressly held that a § 1983 remedy is not available for IDEA violations because the IDEA provides a comprehensive remedial scheme. *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803, 806 (3d Cir. 2007) (en banc) (overruling , in part, *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995)). Plaintiff does not attempt to distinguish *A.W.* Rather, plaintiff argues that the Third Circuit mistakenly decided *A.W.*, and that money damages under § 1983 are available for violations of the IDEA.[1] Pl.'s Resp. at 3. That argument, having been made, is preserved for appeal. It cannot, however, be accepted here, as *A.W.* is

---

[1] Plaintiff does not appear to argue that damages are available under § 1983 for violations of § 504 of the Rehabilitation Act. Even if she had, this court would be bound to follow *A.W.*'s holding that § 504 also provides a comprehensive remedial scheme, so no damages remedy is available for violations of it under § 1983. *See A.W.*, 486 F.3d at 806.

binding precedent on this court. Therefore, as to the claim for money damages under § 1983, defendant's motion to dismiss will be granted.

> B. Whether plaintiff may seek money damages under § 504 of the Rehabilitation Act

Defendant argues that plaintiff has failed to allege a violation of § 504 of the Rehabilitation Act for which money damages may be awarded. Section 504 provides, in relevant part, that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

Plaintiff alleges that defendant's failure to provide plaintiff with a free and appropriate public education suitable for a person with plaintiff's disability constitutes discrimination in violation of this statute and its implementing regulations.

Defendant notes that § 504 incorporates the remedial scheme of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d to d-7. *See Bowers v. Nat'l Coll. Athletic Ass'n*, 346 F.3d 402, 427 (3d Cir. 2003). Section 601 of Title VI largely mirrors the language of § 504 of the Rehabilitation Act:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

In *Guardians Ass'n v. Civil Serv. Comm'n of N.Y.C.*, 463 U.S. 582 (1983), the Supreme Court, without a majority opinion, considered (a) whether the above-quoted language of Title VI not only addresses intentional discrimination but also prohibits activity that has a discriminatory effect on racial minorities but lacks discriminatory intent, and (b) if so, whether money damages are available under the statute to remedy unintentional discrimination. Five justices agreed, albeit on differing grounds, that Title VI, taken together with its implementing regulations, prohibits unintentional discrimination. Two of the five justices found that prohibition in the statutory text. *Id.* at 584 n.2, 592 (White, J., announcing the judgment of the Court); *id.* at 623 (Marshall, J., dissenting). The other three of the five justices found that the statute itself did not prohibit unintentional discrimination but that the implementing regulations validly did so. *Id.* at 645 (Stevens, J., joined by Brennan and Blackmun, J.J., dissenting). A largely different majority, however, ruled that, under Title VI, money damages are not available to remedy unintentional discrimination. Justice White, announcing the judgment of the Court, opined that although Title VI prohibits unintentional discrimination, Congress's intent was to limit the money-damages remedy to instances of intentional discrimination. *Id.* at 602-03, 607. Chief Justice Burger, Justice Powell, Justice Rehnquist, and Justice O'Connor agreed with this result, but their view was that Title VI does not prohibit unintentional discrimination at all, that the regulations that do so impermissibly stray from

the statute, and that, accordingly, no remedy is available for unintentional discrimination. *Id.* at 611 & n.5 (Powell, J., joined by Burger C.J., and Rehnquist, J., concurring in judgment); *id.* at 614 (O'Connor, J., concurring in judgment). A curious result of the Court's several opinions in *Guardians* is that, while seven members of the Court (Burger, C.J., and Powell, Brennan, Blackmun, Stevens, Rehnquist, and O'Connor, J.J.) believed that the text of Title VI prohibited only intentional discrimination, regulations that prohibited unintentional discrimination were allowed to stand, albeit without any corresponding money-damages remedy.

In *Alexander v. Sandoval*, 532 U.S. 275, 281–82 (2001), the Court acknowledged that *Guardians* had allowed the Title VI regulations to come unmoored from the interpretation of the statute embraced by a majority of the Court. *Id.* (noting "considerable tension" between the validity of the regulations and the rule that Title VI prohibits only intentional discrimination). In *Sandoval*, the Court held that the private right of action implicit in Title VI extends only to actions based on the statutory prohibition of intentional discrimination; there is no private right of action for unintentional discrimination under the Title VI regulations. *Id.* at 284, 293. *Sandoval* did not, however, expressly consider the validity of the regulations prohibiting unintentional discrimination, since those regulations were not at issue. *Id.* at 282.

Defendant here argues that § 504 should be read to conform to the *Sandoval* Court's reading of Title VI, and that plaintiff should not be allowed to maintain her § 504

action against defendant without alleging intentional discrimination.[2] Defendant acknowledges, however, that the Third Circuit, in decisions antedating *Sandoval*, has held that a § 504 plaintiff need not allege intentional discrimination, *Ridgewood Bd. of Ed. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999); *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995), *overruled on other grounds*, *A.W.*, 486 F.3d at 803, 806; *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1992), and that money damages are available directly under § 504, *Matula*, 67 F.3d at 494. But defendant argues that these decisions are superseded by *Sandoval*.

This court must follow precedent set by the Third Circuit unless that precedent is clearly overruled by the Supreme Court. Here, *Sandoval*'s effect on *Ridgewood*, *Matula*, and *Nathanson* is not clear. *Sandoval* dealt specifically with the disconnect that the *Guardians* decision left between the text of Title VI and the conduct prohibited by its implementing regulations. The Supreme Court has not suggested that any such disconnect exists in the § 504 context. To the contrary, the Court has noted in *dicta* that § 504 itself may prohibit more than intentional discrimination. *Alexander v. Choate*, 269 U.S. 287, 296–97 (1985). Given that the Supreme Court has not drawn the distinction that defendant urges between the statutory prohibition and the affirmative duties provided by the implementing regulations in the § 504 context, and that the Third Circuit has

---

[2] Defendant frames its argument as one about the availability of money damages, but, as *Sandoval* did not address that question, this court assumes that defendant's real argument is that no private right of action attaches to § 504 claims that do not allege intentional discrimination.

specifically held that money damages are available under § 504 without regard to whether the plaintiff alleges intentional discrimination, this court is not at liberty to deviate from the Third Circuit's holdings in *Ridgewood*, *Matula*, and *Nathanson*. It is for the Third Circuit, not this court, to decide whether the authority of those decisions has been undermined by *Sandoval*.[3]

An appropriate order follows.

---

[3] There is some dispute between the parties as to whether plaintiff has, in fact, alleged intentional discrimination. In light of this court's decision that the § 504 claim for money damages may stand irrespective of whether plaintiff has alleged intentional discrimination, there is no need to dissect the complaint further.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLYSON B., et al.,
        Plaintiffs,

v.

MONTGOMERY COUNTY
INTERMEDIATE UNIT NO.23,
        Defendant.

Civ. No. 05-6807

**ORDER**

AND NOW, this 12th day of June, 2008, for the reasons given in the foregoing opinion, it is hereby ORDERED that:

(1)    defendant's motion to dismiss is DENIED as to the availability of money damages under § 504 of the Rehabilitation Act for violations of the Act that do not involve intentional discrimination, and

(2)    defendant's motion to dismiss is GRANTED in all other respects.

BY THE COURT:

/s/ Louis H. Pollak

_____

Pollak, J.